```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JAMES CURRY,

                         Petitioner,         MEMORANDUM & ORDER
                                             09-CV-5226(JS)
         -against-

PATRICK GRIFFIN, Superintendent
of Southport Correctional Facility,

                         Respondent.
----------------------------------------X
APPEARANCES
For Petitioner:    James Curry, pro se
                   04A5919
                   Southport Correctional Facility
                   236 Bob Masia Drive
                   Box 2000
                   Pine City, NY 14871

For Respondent:    Alyson J. Gill, Esq.
                   Office of the New York State Attorney General
                   120 Broadway, 12th Floor
                   New York, NY 10271

                   Ronnie J. Lamm, Esq.
                   Suffolk County District Attorney's Office
                   200 Center Drive
                   Riverhead, NY 11901
```

SEYBERT, District Judge:

       James Curry ("Petitioner") petitions this Court pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, his Petition is DENIED.

BACKGROUND

I.   <u>Petitioner's Convictions, Sentences, and Parole Revocation</u>

       In 1978, Petitioner was convicted in Supreme Court, Suffolk County of Murder in the Second Degree and two counts of

Attempted Burglary in the Third Degree and sentenced to an indeterminate term of fifteen years to life. (Att'y Gen. Exs. A, D at 3.) Petitioner remained incarcerated until 1994, when he was released to parole supervision. (Att'y Gen. Ex. B.) His certificate of release indicated that he would remain under the supervision of the Division of Parole for the rest of his life. (Att'y Gen. Ex. B.)[1]

Petitioner remained on parole until he was arrested on August 22, 2003 for allegedly driving on the wrong side of the highway and being in possession of a used crack pipe. He was charged with three counts of Reckless Endangerment in the First Degree in violation of N.Y. PENAL LAW § 120.25, one count of Driving While Ability Impaired by Drugs in violation of N.Y. VEH. & TRAF. LAW § 1192(4), one count of Criminal Possession of a Controlled Substance in the Seventh Degree in violation of N.Y. PENAL LAW § 220.03, one count of Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree in violation of N.Y. VEH. & TRAF. LAW § 511(1)(a), and four traffic violations. (Lamm Aff. ¶ 3; Pet. Ex. D.) Petitioner sustained injuries prior to arrest

---

[1] The certificate of release also contained standard "Conditions of Release," including not violating the law, not acting in a way that threatens the safety of himself or others, and not using or possessing any drug paraphernalia or controlled substance, and stated that violating any of these conditions may result in parole revocation. Petitioner signed the certificate on January 14, 1994. (Att'y Gen. Ex. B.)

2

and was admitted to Brookhaven Memorial Hospital Medical Center in Patchogue, New York that same day for treatment. (Pet. Ex. B.)[2]

On August 21, 2003, a Warrant for Retaking and Detaining a Paroled or Conditionally Released Prisoner was issued (Att'y Gen. Ex. C),[3] and on August 29, 2003, while Petitioner was still in the hospital, a Notice of Prospective or Pending Grand Jury Proceeding pursuant to N.Y. CRIM. PROC. LAW § 190.50(5)(a) was sent to Petitioner's attorney, Robert W. Dapelo, Esq. Mr. Dapelo, on that same date, sent the Suffolk County District Attorney's Office a letter stating that Petitioner waived his rights under N.Y. CRIM. PROC. LAW §§ 30.30, 30.20, and 180.80 until September 30, 2003. (Pet. Ex. C.)

Petitioner was arraigned at Brookhaven Memorial Hospital on September 2, 2003 and bail was set at $25,000 cash or $250,000 bond. (Lamm Aff. ¶ 5.) He was discharged on September 4, 2003 and, after being evaluated at the Peconic Bay

---

[2] Petitioner's injuries were severe: He was diagnosed with a closed head injury with skull fracture, epidural hematoma, traumatic subarachnoid hemorrhage, and cerebral contusion. (Pet. Ex. B.) In July 2006, Petitioner commenced a civil rights action in the United States District Court for the Eastern District of New York pursuant to 42 U.S.C. § 1983 against the arresting officers for unlawful use of force during his arrest. See Curry v. Campbell (06-CV-2841 (DRH)(ETB)). This action is still pending.

[3] A copy of this warrant was provided to Petitioner's counsel on December 30, 2003. (Lamm Aff. ¶ 7.)

3

Medical Center, taken to the Suffolk County Correctional Facility. (Lamm Aff. ¶ 6.)

On September 26, 2003, the Division of Parole issued a Notice of Violation and Supplementary Violation of Release Report. Documented on the Notice was Petitioner's waiver of his preliminary parole revocation hearing. Petitioner was provided a copy of both the Notice and the Report. (Att'y Gen. Mem. 2; Lamm Aff. ¶ 6.)

In December 2003, Susan Menu, Esq. replaced Mr. Dapelo as Petitioner's counsel. Between January and May 2004, Ms. Menu wrote three letters to the Suffolk County District Attorney's Office attempting to negotiate a plea agreement under which Petitioner would only be required to plead guilty to a misdemeanor offense because "should Mr. Curry plead quilty [sic] to a felony and receive even the minimum, he would be subject to a considerable enhancement of his time in prison due to his lifetime parole status." (Kucera Aff. in Opp. to 440 Motion Ex. J.)

On September 28, 2004, Petitioner appeared in County Court, Suffolk County represented by Ms. Menu where he waived his rights to indictment by the Grand Jury and consented to prosecution by Superior Court Information. He then, pursuant to a negotiated plea agreement, pled guilty to one count of Attempted Reckless Endangerment in the First Degree, N.Y. PENAL

4

LAW §§ 110, 120.25, a class E felony, and his case was adjourned for sentencing. (Att'y Gen. Mem. 3; Lamm Aff. ¶¶ 9-10.) In exchange for Petitioner's guilty plea, the Government agreed not to make a negative recommendation with respect to Petitioner's eventual parole hearing. See People v. Curry, 56 A.D.3d 489, 489, 865 N.Y.S.2d 915 (2d Dep't 2008).

On October 26, 2004, Petitioner was sentenced as a second felony offender to the bargained-for term of one and one-half to three years imprisonment. (Att'y Gen. Ex. D; Pet. Ex. D.) However, neither the sentencing judge nor the Sentence and Commitment Order mentioned the impact of parole revocation on Petitioner's term of imprisonment. Plaintiff never appealed his conviction.

A few weeks later on November 10, 2004, the Division of Parole sent Petitioner a notice declaring him delinquent, revoking his parole, and "requesting the Inmate Records Coordinator [to] take such action as is necessary to recompute [his] sentence(s) in accordance with the law." (Att'y Gen. Ex. F.) The notice also advised Petitioner that "[t]he time from the established date of delinquency to [his] scheduled maximum expiration of sentence, on the previous conviction, may be added, by the Department of Correctional Services, to the maximum expiration term of [his] new sentence." (Att'y Gen. Ex. F.)

5

Petitioner appeared before the Parole Board on April 5, 2005, January 16, 2007, November 8, 2008, and in November of 2010. Each time, Petitioner was denied parole.

II. State Petitions Challenging his Conviction and Sentence

On June 10, 2005, Petitioner filed a motion pro se in Supreme Court, Suffolk County pursuant to N.Y. CRIM. PENAL LAW § 440.10 seeking to vacate the judgment of conviction on the grounds that: (1) he did not personally plead guilty; (2) his plea was not knowing, voluntary, and intelligent; and (3) his plea was the result of ineffective assistance of counsel. (Lamm Aff. ¶ 11.) On December 20, 2005, the court denied his motion.[4]

Then, on February 24, 2006,[5] he filed a second § 440.10 motion seeking to vacate the judgment of conviction on the grounds that: (1) the Court did not have jurisdiction to accept his plea; (2) the prosecutor used duress and threats to obtain his consent to waive the indictment; (3) the prosecutor breached her promise not to make any negative references that would

---

[4] Respondent asserts that Petitioner withdrew this motion "in August 2005," and "[o]n December 20, 2005, the Supreme Court (Mullen, J.) summarily denied [P]etitioner's first motion, even though [P]etitioner's motion had been withdrawn." (Lamm Aff. ¶ 11.) Upon reviewing the state court record, the Court finds that, while Petitioner did seek to withdraw his motion on August 18, 2005, his motion remained pending until the court issued its decision denying the motion on December 20, 2005 (which did not acknowledge Petitioner's request to withdraw it).

[5] Both the Attorney General's and the District Attorney's responses incorrectly state that this motion was filed on February 14. Review of the state court record indicates otherwise.

6

prevent Petitioner from receiving parole; and (4) he did not receive effective assistance of counsel. The court denied the motion on March 28, 2006, and the Appellate Division, Second Department affirmed the denial on November 5, 2008 holding that: (1) breach of a plea agreement does not entitle Petitioner to a dismissal of the indictment; (2) he failed to preserve his claim regarding the voluntariness of his plea for appellate review; and (3) he forfeited his ineffective assistance of counsel claim upon pleading guilty. See Curry, 56 A.D.3d at 489. Petitioner then sought leave to appeal to the Court of Appeals, which was denied on February 20, 2009. People v. Curry, 12 N.Y.3d 757, 876 N.Y.S.2d 708 (2009).

In the interim, on July 7, 2008, Petitioner filed a petition for a writ of habeas corpus in Supreme Court, Wyoming County asserting that the New York State Department of Correctional Services ("DOCS") improperly added his undischarged 1978 sentence of fifteen years to life to run consecutive to his 2004 sentence. (Att'y Gen. Ex. K.) The court denied the petition on November 25, 2008 holding that "the respondent's computation of the sentences was mandated under the Penal Law and did not constitute an illegal 'alteration' to the sentence pronounced by the Court." (Att'y Gen Ex. N at 2.) Petitioner filed an appeal to the Appellate Division, Fourth Department,

which was summarily denied on March 18, 2009. (Att'y Gen. Ex. Q.)[6]

Meanwhile, Petitioner filed a pro se application for a writ of habeas corpus in the Appellate Division, Fourth Department on December 23, 2008, which was denied on April 20, 2009. (Att'y Gen. Ex. R.) The Court of Appeals denied leave to appeal on September 8, 2009. (Att'y Gen. Ex. S.) People ex rel. Curry v. Conway, 13 N.Y.3d 766, 886 N.Y.S.2d 867 (2009).

On May 13, 2009, Petitioner filed another Article 78 petition pro se in the Supreme Court, Albany County seeking immediate release on the ground that the Division of Parole and DOCS had illegally computed, without a hearing, the undischarged term of imprisonment for his 1978 conviction to run consecutive to his 2004 conviction. (Att'y Gen. Ex. T.) The court, on September 2, 2009, dismissed the petition finding that: (1) his parole was revoked by operation of law without the need for a final revocation hearing based on his 2004 felony conviction; and (2) DOCS properly computed his sentence as running consecutively to the prior undischarged life sentence. (Att'y Gen. Ex. U.)

---

[6] While this was pending, Petitioner filed an Article 78 Petition in the Appellate Division, Fourth Department. The Appellate Division denied the petition on October 23, 2008, Curry v. Conway, No. OP 08-0239, 2008 WL 4737302 (4th Dep't 2008), and leave to appeal the Court of Appeals was denied on February 17, 2009, 12 N.Y.3d 702, 904 N.E.2d 505, 876 N.Y.S.2d 350 (2009).

8

III. Federal Relief

On December 17, 2009, Petitioner commenced another pro se civil rights action in the Northern District of New York under 42 U.S.C. § 1983 alleging that state officials have been conspiring to keep him incarcerated in an effort to cover up the alleged unlawful beating that took place prior to his arrest on August 22, 2003. In the complaint, he sought, inter alia, immediate release from custody. Curry v. Cuomo (10-CV-0257).

Then on December 23, 2009,[7] Petitioner filed the pending application for a writ of habeas corpus in the Eastern District of New York. Thereafter, the civil rights complaint was transferred to this Court, and on March 6, 2010, the undersigned issued a Memorandum and Order consolidating the civil rights action with the pending Petition because "28 U.S.C. § 2254 is the proper procedural mechanism for challenging a sentence." (10-CV-0257, Docket Entry 21 at 2.) The Court also stated that to the extent that the Complaint alleged civil rights violations arising out of the alleged assault by police officers during his 2003 arrest, those claims are the subject of

---

[7] Although the docket indicates that the Petition was docketed on December 28, 2009, the Petition is deemed filed on the date that it was given to correctional authorities for mailing to the Court--in this case, December 23, 2009. (Pet. 15.) See Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001) (citing Houston v. Lack, 487 U.S. 266, 270-71, 274, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988)).

9

a separate civil action and are likely time-barred. (10-CV-0257, Docket Entry 21 at 2.)

DISCUSSION

In the instant Petition, Petitioner raises two grounds for relief: (1) he never waived his constitutional right to be indicted by the Grand Jury and (2) DOCS illegally altered his sentence to include the undischarged life sentence on his 1978 conviction. The Suffolk County District Attorney's Office filed a response to the first ground, arguing that Petitioner "made a knowing, voluntary, and intelligent choice to resolve the case through superior court information" and, accordingly, that "no federal constitutional violation has been shown." (Lamm Aff. ¶¶ 23-24, 27.) The Office of the Attorney General of the State of New York filed a response to the second ground arguing that the entire Petition is time-barred, and in the alternative that DOCS properly calculated Petitioner's sentence.

The Court will first address the issue of timeliness before turning the merits of Petitioner's claims.

I. Timeliness

Respondent argues, inter alia, that the Petition must be dismissed as untimely. The Court agrees.

A. Commencement of Limitations Period

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on

commencing a federal habeas petition. 28 U.S.C. § 2244(d). The AEDPA provides that the limitation period shall run from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," and "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A), (D).[8]

The Court finds that, under either standard, the limitations period began to run on November 25, 2004. Petitioner's judgment became "final" on November 25, 2004 upon the expiration of his time to file a notice of appeal. See N.Y. CRIM. PROC. LAW § 460.10(1)(a); Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2002). And Petitioner knew or should have known "the factual predicate" of his claims on or before November 25, 2004: as early as January 2004, his lawyer was attempting to negotiate a plea deal involving only a misdemeanor offense knowing that pleading guilty to a felony would result in parole revocation, and on November 10, 2004 Petitioner received a notice from the Division of Parole that his parole was being revoked and that DOCS may add the remainder of the undischarged sentence on his 1978 conviction to the maximum term of his new

---

[8] Under 28 U.S.C. § 2244(d)(1)(B)-(C), other events might trigger the limitations period. But neither of those events are relevant here.

sentence.  Additionally, DOCS maintains a public database which includes its calculated maximum expiration date for all state inmates' terms, including Petitioner's.  <u>See</u> Inmate Information, N.Y. State Dep't of Corr. & Cmty. Supervision, http://nysdoccslookup.doccs.ny.gov/.

Accordingly, Petitioner had one year from November 25, 2004, or until November 25, 2005, to file his federal petition for writ of habeas corpus.  As such, his Petition, filed on December 23, 2009, is four years and twenty seven days[9] untimely unless Petitioner can establish that the limitations period was tolled.

B. <u>Statutory Tolling</u>

The limitations period is tolled during the time while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  Accordingly, the statute of limitations was tolled between June 10, 2005 and December 20, 2005--or 194 days--while Petitioner's § 440.10 motion was pending in Supreme Court, Suffolk County and from February 24, 2006 through September 8, 2009--or 1,293 days--while his subsequent § 440.10 motion and state habeas petitions

---

[9] Respondent asserts that the Petition is four years and twenty eight days untimely.  However, Respondent failed to factor in that 2008 was a leap year.

12

were pending,[10] for a total of four years and twenty six days. Thus, notwithstanding the statutory tolling, the instant Petition was filed one day late.[11]

   C.   Equitable Tolling

However, the AEDPA's statute of limitation is not "an inflexible rule requiring dismissal whenever [its] clock has run," Day v. McDonough, 547 U.S. 198, 208, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006)), and the Court may, in "rare and exceptional circumstances," exercise its equitable powers to excuse a petitioner's delay in filing a federal habeas petition. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks and citation omitted). In order to equitably toll the limitation period, Petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some

---

[10] Petitioner's Article 78 petitions and § 1983 complaints do not toll the statute of limitations. See Collins v. Ercole, 667 F.3d 247, 250 (2d Cir. 2012) (holding that an Article 78 petition challenging DOCS' calculation of a defendant's prison term to include the remainder of a prior undischarged sentence did not toll the statute of limitations); Kevilly v. Connell, No. 06-CV-5672, 2009 WL 750227, at *5 n.5 (E.D.N.Y. Mar. 19, 2009) (stating that the filing of a federal lawsuit under § 1983 does not toll the limitations period (citing Duncan v. Walker, 533 U.S. 167, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001)).

[11] One hundred and ninety six days transpired between November 25, 2004, the date Petitioner's judgment of conviction became final, and the filing of his first § 440.10 motion on June 10, 2005. Another 65 days passed between the Court's December 20, 2005 decision on his first § 440.10 motion and his filing the second § 440.10 motion on February 24, 2006. Then, after fully exhausting all collateral attacks, Petitioner waited another 105 days--a total of 366 days--to file the pending Petition.

extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, ___ U.S. ___, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010) (internal quotation marks and citation omitted).

Here, Petitioner has failed to articulate any circumstances, let alone an extraordinary one, that prevented him from timely filing his Petition, and a review of the record similarly does not indicate any circumstances which would warrant tolling. Accordingly, he is not entitled to equitable tolling, and his Petition must be dismissed as time-barred.

II. Merits of Petitioner's Claims

Even if the Petition was timely, it is meritless.

A. Waiver of Indictment by Grand Jury

Petitioner's first ground for relief is that the court lacked jurisdiction to accept his guilty plea because his waiver of indictment was invalid. However, whether his waiver was valid or not, this claim is grounded in state criminal procedure, see Peters v. Kiff, 407 U.S. 493, 496, 92 S. Ct. 2163, 33 L. Ed. 2d 83 (1972) ("[T]he Fifth Amendment right to a grand jury does not apply in a state prosecution."); People v. Iannone, 45 N.Y.2d 589, 593 n.3, 412 N.Y.S.2d 110, 113 n.3, 384 N.E.2d 656, 659 n.3 (1978) ("The right to indictment by a Grand Jury in New York is dependent solely upon [the] State Constitution, since the Grand Jury provision contained in the

Fifth Amendment to the Federal Constitution is not applicable to the States."), and is therefore not cognizable on federal habeas review, see Bennefield v. Kirkpatrick, No. 06-CV-6104, 2008 WL 623209, at *2 (Mar. 4, 2008) (collecting cases holding that "claims alleging the abridgment of [a defendant's right to indictment by a grand jury] are . . . not cognizable on habeas review since, as the Supreme Court has 'stated many times . . . federal habeas corpus review does not lie for errors of state law'" (second ellipsis in original) (quoting Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)); see also 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that "he is in custody in violation of the Constitution or laws and treaties of the United States" (emphasis added)).

    B.   DOCS Calculation of Petitioner's Sentence

Petitioner also asserts that DOCS violated his right to due process by illegally altering his sentence--i.e., by revoking his parole and adding the undischarged remainder of life sentence on the 1978 murder conviction to his sentence on the 2004 guilty plea--without conducting a final parole revocation hearing. While Petitioner is correct that the state may not revoke his parole (thereby adding the undischarged term of his prior sentence to his current sentence) without providing minimum due process protections, see Morrissey v. Brewer, 408

15

U.S. 471, 481-82, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), "[w]here, as here, a parolee is arrested and convicted of a new crime, the need for a final hearing . . . evaporates because the requirements of due process are satisfied either by the trial underlying the parolee's conviction or waived by his plea of guilty," Keyes v. Juul, 270 F. Supp. 2d 327, 329 (E.D.N.Y. 2003) (collecting cases). As such, the Court finds that DOCS' actions did not implicate any federal interests for the purposes of habeas review.

## CONCLUSION

For the foregoing reasons, Petitioner's application for a writ of habeas corpus is DENIED. Because there can be no debate among reasonable jurists that Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court to mail a copy of this Memorandum and Order to the pro se Petitioner and to mark this matter, and member case 10-CV-0257, CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: April   20  , 2012
       Central Islip, New York

16